UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

IURII D.,

      Petitioner,

    v.

TONYA ANDREWS,

      Respondent.

No. 1:26-cv-00758-TLN-CKD

**ORDER**

This matter is before the Court on Petitioner Iurii D.'s ("Petitioner") Petition for Writ of Habeas Corpus (ECF No. 1), which this Court has construed as a Motion for Temporary Restraining Order ("TRO") based on Petitioner's brief and the relief requested therein (ECF No. 5). The Court ordered Respondent to submit a response to Petitioner's request for immediate injunctive relief. (ECF No. 5.) Respondent filed a Motion to Dismiss Petition for Writ of Habeas Corpus, which the Court construes as an opposition to the Motion for TRO.[1] (ECF No. 8.) Petitioner filed a reply and opposition to Respondent's Motion to Dismiss. (ECF No. 9.) For the reasons set forth below, Petitioner's Motion for a TRO is GRANTED.

///

---

[1] Respondent's filing, titled as a Motion to Dismiss, is not a properly noticed motion. *See* L.R. 230(b).

1

## I.   FACTUAL BACKGROUND

Petitioner is a native and citizen of Russia.  (ECF No. 8 at 9.)  On or about July 7, 2024, Petitioner entered the United States for a CBP One appointment and requested asylum.  (*Id.*; ECF No. 1 at 9.)  Petitioner was issued an Expedited Removal Order and taken into the custody of the Department of Homeland Security ("DHS") pending a credible fear interview.  (ECF No. 8 at 9.)  He was later issued a Notice to Appear.  (*Id.*)

On January 8, 2025, an immigration judge ("IJ") conducted a custody redetermination hearing and ordered Petitioner released on bond.  (ECF No. 7 at 6–10.)  The IJ found Petitioner's release would not present a danger to the community and he did not pose a high flight risk such that no amount of bond or conditions could mitigate the risk.  (*Id.* at 7–9.)  Petitioner posted bond on January 29, 2025, and was released on January 30, 2025, under the supervision of Immigration and Customs Enforcement ("ICE").  (ECF No. 1 at 9; ECF No. 8 at 9.)  On February 7, 2025, DHS appealed the IJ's order to the Board of Immigration Appeals ("BIA").  (ECF No. 7 at 7.)  DHS did not move for a stay of the bond order.  (ECF No. 9 at 3.)

Following his release on bond, Petitioner resided in Daly City, California.  (*Id.*)  He became an active member of the community, obtained work authorization, and received a job offer at the Japanese Tea Garden in San Francisco's Golden Gate Park.  (ECF No. 1 at 9, 16.)  Petitioner submits that he followed all conditions of his release, did not miss any check-ins, and has no criminal record.  (*Id.* at 9.)

On May 30, 2025, Petitioner went to the ICE office in San Francisco to obtain a copy of his A-file so he could apply for a Social Security number and accept his job offer.  (*Id.*)  He was abruptly detained.  (*Id.*)  According to Petitioner, when he asked why he was under arrest given the IJ's order releasing him on bond, the arresting officer replied, "We just revoked it."  (*Id.*)  An administrative warrant issued the day of his arrest states Petitioner was re-detained because he "either lacks immigration status or . . . is removeable[.]"  (ECF No. 9-1 at 1.)  On July 14, 2025, Petitioner requested a bond hearing and was denied.  (ECF No. 1 at 2.)

On September 8, 2025, the BIA vacated the IJ's bond order and ordered Petitioner be held in DHS custody without bond.  (ECF No. 8 at 17–20.)  Petitioner has now been in detention for

over eight months.  He is currently being held at the Golden State Annex Detention Center.  (ECF No. 1 at 1.)  His removal proceedings remain pending.  (*Id.* at 4.)

On January 29, 2026, Petitioner filed a Petition for Writ of Habeas Corpus.  (*Id.* at 1.)  Petitioner challenges his detention as violating his due process rights and federal law.  (*Id.* at 6–7.)  Petitioner seeks immediate release.  (*Id.* at 7.)

## II.    STANDARD OF LAW

For a TRO to issue, courts consider whether Petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The Court may weigh Petitioner's showing on each of the *Winter* factors using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, if "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to succeed in a request for a TRO.  *Id.* at 1134–35.

## III.    ANALYSIS

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

### A.    Likelihood of Success on the Merits

Petitioner argues that his prolonged detention violates his due process rights.  (ECF No. 1 at 6–7.)  In opposition, Respondent argues that habeas relief should be denied because Petitioner failed to exhaust his administrative remedies.  (ECF No. 8 at 3–4.)  Respondent also argues that Petitioner is an "applicant for admission" subject to the mandatory detention framework of 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)").  (*Id.* at 5.)  The Court begins with exhaustion before turning to Petitioner's due process claim.

///

*i.      Exhaustion*

"Under the exhaustion doctrine, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *S.E.C. v. G. C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981) (quoting *Myers v. Bethlehem Shipbuilding Co.*, 303 U.S. 41, 50–51 (1938)). "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). Section 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001) (abrogated on other grounds). However, the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Id.*

"Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Nevertheless, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *S.E.C.*, 637 F.2d at 688 n.4.

Here, the Court waives the prudential exhaustion requirement as it would be futile for Petitioner to seek release by administrative means. As an initial matter, it is unclear to the Court what administrative remedy Respondent claims Petitioner failed to exhaust. Respondent states that "Petitioner had the right to appeal the BIA decision to the Nineth [sic] Circuit," but cites no authority for that supposed right. (ECF No. 8 at 4.) Instead, as Petitioner points out, while the Court of Appeals has jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a)(5),

4

there is no review process for a BIA bond decision authorized by law.  (ECF No. 9 at 6.)  Rather, once a noncitizen has received a bond hearing before an IJ, "he may appeal the IJ's decision to the [BIA].  If the [noncitizen] is dissatisfied with the BIA's decision, he may then file a habeas petition in district court, challenging his continued detention."  *Leonardo v. Crawford*, 646 F.3d 1157, 1159 (9th Cir. 2011).  That is the posture of Petitioner's habeas petition.  Petitioner is not seeking review of the BIA's bond decision but is instead challenging his continued detention which began over three months before the BIA's decision was issued on September 8, 2025.  (ECF No. 8 at 17.)  The Court thus rejects Respondent's argument that Petitioner failed to exhaust his administrative remedies by not appealing the BIA's decision regarding bond.

Although it is unclear what administrative remedy Respondent believes remains available to Petitioner, the Court finds the *Puga* factors do not support the need for prudential exhaustion.  First, an administrative appellate record is not necessary to reach a proper decision on Petitioner's due process claim.  Second, others will not be encouraged to bypass the administrative scheme as no such scheme appears to exist.  Finally, it is unlikely the agency will correct its own mistake upon further review.  Petitioner requested a bond hearing after he was detained and that request was denied.  (*See* ECF No. 1 at 2.)  Requiring pursuit of additional administrative remedies would be futile.  *See El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Rev.*, 959 F.2d 742, 747 (9th Cir. 1991) ("[T]here is no requirement of exhaustion where resort to the agency would be futile.").  Prudential exhaustion is therefore not required in this case.  *See*, *e.g.*, *Daley v. Andrews*, No. 1:25-CV-00922-KES-CDB, 2026 WL 101840, at *4 (E.D. Cal. Jan. 14, 2026) (considering the *Puga* factors in a similar habeas challenge to prolonged detention and finding prudential exhaustion not required); *Estrada-Samayoa v. Cruz*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *7 (E.D. Cal. Nov. 24, 2025) (waiving prudential exhaustion under similar circumstances); *Guzman v. Andrews*, No. 1:25-CV-01015-KES-SKO, 2025 WL 2617256, at *3 (E.D. Cal. Sept. 9, 2025) (same).  Accordingly, the Court will not deny Petitioner's request for habeas for failure to exhaust administrative remedies.

ii.      *Due Process*

Having found the petition is not barred for failure to exhaust, the Court now turns to

5

Petitioner's likelihood of success on his due process claim.  The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings, including deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*a)  Liberty Interest*

"Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025).  To determine whether an individual's specific conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025).

Here, Petitioner gained a protected liberty interest in his continued freedom when he was released from immigration custody on bond and allowed to reside in the United States under ICE supervision for approximately four months.  (ECF No. 1 at 9.)  Under *Morrissey*, this release was

an implied promise that Petitioner would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release.  Petitioner submits that he followed all conditions of his release, did not miss any check-ins, and has no criminal record. (*Id.*)  Respondent does not dispute this, nor claim Petitioner was detained for violating the terms of his release.  (*See generally* ECF No. 8.)  As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his immigration and asylum proceedings.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Respondent's argument that Petitioner is subject to mandatory detention under § 1225(b)(2) does not change this Court's analysis.  The vast majority of courts across this Circuit, including this one, have repeatedly rejected Respondent's argument on the applicability of § 1225(b)(2).  *See e.g.*, *Hortua v. Chestnut, et al.*, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 at *3(E.D. Cal. Dec. 9, 2025); *Armando Modesto Estrada-Samayoa v. Orestes Cruz, et al.*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).  Respondent puts forth no compelling argument to convince this Court that it should now find otherwise.

For these reasons, the Court finds Petitioner has a liberty interest in his release from

immigration detention protected by the Due Process Clause.

### b) *Procedural Due Process*

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

As to the first *Mathews* factor — Petitioner's private interest — Petitioner has a substantial private interest in remaining free from detention. Petitioner lived in the United States for approximately four months, obtained work authorization, and received a job offer. (ECF No. 1 at 9.) He also became an active member of his community. (*Id.*) The time Petitioner spent released on bond and the meaningful community connections he appears to have made in that time create a powerful interest for Petitioner in his continued liberty. *See Doe*, 787 F. Supp. 3d at 1093–94 (finding similarly).

As to the second *Mathews* factor — the risk of erroneous deprivation — the risk here is considerable as Petitioner has received virtually no procedural safeguards such as a bond or custody redetermination hearing. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). "Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025). Petitioner has no criminal history. (ECF No. 1 at 9.) Although the BIA concluded that Petitioner was a flight risk based on the record from the IJ's January 8, 2025 bond decision, that conclusion only highlights the necessity of procedural safeguards to ensure

Petitioner's re-detention is currently justified. (ECF No. 8 at 20.) While this Court expressly makes no finding as to whether Petitioner presents a flight risk, it certainly stands to reason that the BIA's finding, based on a record where Petitioner had never been released into the United States and had no opportunity to demonstrate his compliance with the conditions of his release, is now outdated. *See Romero v. Kaiser*, No. 22-CV-02508-TSH, 2022 WL 1443250, at *1–3 (N.D. Cal. May 6, 2022) (finding petitioner was entitled to a hearing prior to re-detention where the BIA had reversed an IJ's order of conditional release and ordered petitioner be detained on no bond); *Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021) (same). The risk that Petitioner has been erroneously deprived of his liberty by Respondent's lack of process is therefore significant.

As to the third *Mathews* factor, the government's interest in detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker is negligible. *R.D.T.M.*, 2025 WL 2686866 at *6. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, Petitioner is not subject to a final order of removal and Respondent has identified no legitimate interest in detaining him. (ECF No. 1 at 4; *see generally* ECF No. 8.)

The cost and time of procedural safeguards are minimal. Notice and custody determination hearings are routine processes for Respondent, and any delay in re-detention (if justified) for time to provide notice and a hearing would be minimal. It would also be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his immigration and asylum proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

On balance, Petitioner was owed notice and hearing before a neutral decisionmaker prior to re-detention. He was denied this process. Accordingly, Petitioner has shown he is likely to

succeed on the merits of his due process claim.[2]

### B.   Irreparable Harm

Petitioner has established he will suffer irreparable harm in the absence of a TRO.  The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]"  *Hernandez*, 872 F.3d at 995.  Such harm is present here.  (*See* ECF No. 1 at 7.)  Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a determination on his immigration and asylum proceedings.  Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."  *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm.").  In addition to harms imposed by his continued immigration detention, Petitioner has shown he is likely to succeed on the merits of his constitutional claim.  The Court thus finds Petitioner has demonstrated irreparable harm.

### C.   Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge."  *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  The Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir.

---

[2] Petitioner also claims his detention violates the Administrative Procedure Act.  (ECF No. 1 at 6.)  As the Court finds Petitioner has demonstrated he is likely to succeed on his constitutional claim, the Court need not address Petitioner's statutory claim.

1983).  Rather, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.  Additionally, and as noted above, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  In sum, the last two *Winter* factors also weigh in Petitioner's favor.

Having found Petitioner has satisfied each of the *Winter* factors, the Court GRANTS Petitioner's Motion for a TRO and orders Petitioner's immediate release on the same terms as he was released prior to his detention.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.")

**IV.    CONCLUSION**

IT IS HEREBY ORDERED:

1. Petitioner's Motion for Temporary Restraining Order is GRANTED (ECF No. 1).

2. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

3. Petitioner shall be RELEASED IMMEDIATELY from Respondent's custody.

4. Respondent is ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a hearing before a neutral fact-finder where: (a) Respondent shows material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondent demonstrates by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

5. Respondent is ordered to SHOW CAUSE why this Court should not grant Petitioner's habeas petition and enter judgment in favor of Petitioner.  Respondent shall file responsive papers within **five court days** from the date of this order or provide notice if Respondent elects to rest on the papers.  Petitioner may file a reply within **eight court**

11

**days** from the date of this order.  The parties shall indicate in their briefing whether they request a hearing.

6. The matter is not set for a hearing, though the Court may set one should it later be determined that a hearing is necessary.

IT IS SO ORDERED.

Date: February 19, 2026

_____

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE